## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| LINDA JEANNE AVERY,<br>    *Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | MO:24-CV-00272-DC-RCG |
| FRANK BISIGNANO, Acting<br>Commissioner of Social Security,[1]<br>    *Defendant.* | §<br>§<br>§<br>§ | |

### REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Plaintiff Linda Jeanne Avery's ("Plaintiff") Complaint and Brief (Docs. 1, 12) and Defendant Frank Bisignano's, Acting Commissioner of Social Security, ("Commissioner") Response Brief (Doc. 21). This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

Plaintiff asks the Court to reverse a decision made by an Administrative Law Judge ("ALJ") of the Social Security Administration ("SSA"), in which the ALJ found that Plaintiff does not possess a disability as defined by the Social Security Act ("Act"), deciding that she could return to her past relevant work ("PRW") as a Licensed Vocational Nurse ("LVN") and administrative clerk. (*See* Docs. 1 at 2; 12 at 16).

---

1. Frank Bisignano assumed the role of Commissioner of Social Security on May 6, 2025. Under Federal Rule of Civil Procedure 25(d), he is substituted as the defendant in this action.

Plaintiff was born on December 4, 1963, was 58 years old at the time she filed an application for disability insurance benefits, and has or had at least an LVN license. (Doc. 6-2 at 29, 53–54). She was previously employed as a LVN and administrative clerk. *Id.* at 56, 70–71.

Plaintiff filed her disability claim on December 2, 2021, asserting the presence of a disability with an alleged onset date of December 1, 2021. (Doc. 6-5 at 51). Plaintiff alleged that she was afflicted with the following illnesses, injuries, or conditions: fibromyalgia; chronic regional pain syndrome/reflex sympathetic dystrophy (CRPS/RSD); shoulder injury; low iron; brain fog; Hashimoto's disease; depression; anxiety; insomnia; and sleep apnea. (Doc. 6-6 at 3).

Plaintiff's application was initially denied on July 21, 2022, and denied again upon reconsideration on May 2, 2023. *Id.* at 10, 20. On November 14, 2023, Plaintiff, her attorney, and a vocational expert ("VE") appeared before the ALJ. (Doc. 6-2 at 47). The ALJ issued a hearing decision on February 20, 2024, finding Plaintiff was not under a disability within the meaning of the Act from December 1, 2021, through the date of the ALJ's decision. *Id.* at 29–30. On July 8, 2024, the SSA's Appeals Council concluded that no basis existed for changing the ALJ's decision and declined to review it. *Id.* at 9. Thus, the ALJ's decision became the final decision of the Commissioner. *See Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) (citation omitted).

Plaintiff thereafter filed her Complaint with this Court on October 28, 2024.[2] (Doc. 1). Plaintiff filed her Brief and Appeal from the Decision of the Acting Commissioner of Social

---

2. In her Complaint, Plaintiff broadly alleges multiple bases for error, including that the ALJ: (1) failed to address Plaintiff's persistent somatic symptoms disorder at step two and during the RFC; (2) her persuasiveness determination concerning the opinion of treating rheumatologist Dr. Haritha Bellam, MD, was conclusory and not supported by substantial evidence; (3) violated SSR 03-02p when considering Plaintiff's CRPS / RSD of the left arm; and (4) her decision that Plaintiff can frequently handle bilaterally is not supported by substantial evidence. (Doc. 1 at 2). In her Brief, however, Plaintiff confined her argument to a single issue: The ALJ's rejection of Dr. Bellam's opinion was conclusory, not amenable to reasonable judicial review, and not supported by substantial evidence. (Doc. 12 at 18). Accordingly, the Court only considers the issue actually raised and developed in Plaintiff's Brief. *See Linda Michelle M. v. Saul*, No. 19-CV-00328, 2020 WL 470279, at *1 (N.D. Tex. Jan. 28,

Security on March 25, 2025. (Doc. 12). Defendant filed a Responsive Brief on May 23, 2025. (Doc. 21). Accordingly, this matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Five-Step Evaluation Process

A "disability" in the context of the Act is defined, in cases not involving blindness, as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). In determining whether a claimant is disabled, an ALJ, acting on behalf of the Commissioner, applies a sequential five-step approach, considering whether:

(1)    the claimant is currently engaged in substantial gainful activity;

(2)    the claimant has a severe medically determinable physical or mental impairment that has lasted or is expected to last for a continuous period of at least 12 months, or combination of impairments that is severe and meets the duration requirement;

(3)    the impairment meets the severity of an impairment enumerated in 20 C.F.R. Pt. 404, Subpt. P, App. 1;

(4)    the claimant can perform [her] past relevant work given [her] residual functional capacity; and

(5)    the claimant's residual functional capacity, age, education, and work experience prevents [her] from performing other work.

*Sherman v. Kijakazi*, No. 22-CV-00775, 2023 WL 3727022, at *2 (W.D. Tex. Apr. 27, 2023) (citing 20 C.F.R. § 404.1520(a)(4)). Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC"). 20 C.F.R. § 404.1520(a)(4). The RFC is "the most [the claimant] can still do" despite any physical or mental limitations caused by her

---

2020) (concluding that because an argument was "not adequately briefed," it "was not fairly before the magistrate judge in [the] social security appeal"); *see also Nehlig v. Comm'r of Soc. Sec. Admin.*, 40 F. Supp. 2d 841 (E.D. Tex. 1999) ("[C]ourt's review is restricted to points of error and argument specifically raised and discussed in briefs submitted after the administrative transcript is filed.").

"impairments and any related symptoms." *Id.* If a claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC "based on all the relevant medical and other evidence in [the] case record." *Id.* Such medical evidence includes "the testimony of physicians and the claimant's medical records." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). After determining the RFC, the ALJ proceeds to steps four and five.

The burden of proving a disability rests with the claimant throughout the first four steps. *Kneeland*, 850 F.3d at 753. If the claimant meets her burden, the burden of proof shifts to the Commissioner at step five "to establish the existence of other available substantial gainful employment that [the] claimant can perform." *Sherman*, 2023 WL 3727022, at *2 (citing *Kneeland*, 850 F.3d at 753). If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that she is unable to perform the alternate work." *Morales v. Comm'r*, No. 22-CV-00120, 2022 WL 18912157, at *2 (W.D. Tex. Dec. 5, 2022) (alteration and quotation marks omitted) (citing *Fraga v. Bowen*, 810 F.2d 196, 1302) (5th Cir. 1987)).

### B.    Judicial Review of the ALJ's Decision

Federal courts review a denial of social security benefits by examining whether: (1) the decision is supported by "substantial evidence"; and (2) the ALJ "applied the proper legal standards." *Schofield v. Saul*, 950 F.3d 315, 319 (5th Cir. 2020) (quotation marks omitted). "Under the substantial-evidence standard, [] court[s] look[] to [the] existing administrative record and ask[] whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). (original alteration omitted). Substantial evidence does not imply a high threshold but does require "more than a mere scintilla." *Id.* at 103 (citation omitted). Indeed, this standard is only met by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation

omitted). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (citation and quotation marks omitted).

In determining whether the ALJ's decision was supported by substantial evidence, courts weigh "four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." *Probst v. Kijakazi*, No. 22-CV-00286, 2023 WL 3237435, at *1 (W.D. Tex. May 3, 2023) (internal quotation marks omitted) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)). Courts must not "reweigh the evidence or substitute [its] judgment for that of the [ALJ]." *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *2 (5th Cir. June 14, 2023) (citation omitted). "Conflicts of evidence are for the [ALJ], not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Thus, courts "may only scrutinize the record to determine whether it contains substantial evidence to support the [ALJ's] decision." *Sherman*, 2023 WL 3727022, at *3. If the ALJ's findings are supported by substantial evidence, they must be affirmed. *See Garcia v. Berryhill*, 880 F.3d 700, 702 (5th Cir. 2018).

### III.    ANALYSIS

#### A.    The ALJ's Findings

In this case, at step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since December 1, 2021, the alleged onset date." (Doc. 6-2 at 31). At step two, the ALJ concluded Plaintiff was afflicted with the following severe impairments: reflex sympathetic dystrophy/complex regional pain syndrome (RSD/CRPS) of the left shoulder; fibromyalgia; degenerative disc disease of the lumbar and cervical spine; seronegative rheumatoid arthritis; and bilateral carpal tunnel syndrome. *Id.* at 32. Step three revealed Plaintiff

5

"does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 35.

In determining Plaintiff's RFC, the ALJ concluded, through the date last insured:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could occasionally climb ramps or stairs; could never climb ladders, ropes or scaffolds; could frequently stoop, kneel, and crawl; could occasionally reach overhead with the bilateral upper extremities; and the claimant could frequently handle and fingering bilaterally.

*Id.* Thus, the ALJ found Plaintiff "retains the capacity to function adequately to perform many basic activities associated with work." *Id.* at 40. This was true notwithstanding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms," as the ALJ held they were "not entirely consistent with the medical evidence and the other evidence in the record." *Id.* at 37.

Turning to step four, the ALJ found Plaintiff "is capable of performing past relevant work as a licensed vocational nurse and administrative clerk" because "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC]." *Id.* at 40–41. In making this determination, the ALJ considered the VE's testimony that Plaintiff could perform her past relevant work, a composite job consisting of LVN duties and administrative clerk duties, each performed at the light exertional level. (Doc. 6-2 at 41). And generally, if the VE testifies the claimant can perform her past relevant work, then the ALJ will find the claimant not disabled at step four. *See Woods v. Colvin*, No. 14-CV-1990, 2015 WL 5311142, at *8 (N.D. Tex. Aug. 26, 2015), *R. & R. adopted*, 2015 WL 5319926 (N.D. Tex. Sept. 10, 2015); *Ramirez v. Saul*, No. 19-CV-368, 2021 WL 980630, at *3 (W.D. Tex. Mar. 15, 2021). Based on this finding, the ALJ concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 1, 2021, through the date of this decision." (Doc. 6-2 at 41).

### B.     Substantial Evidence

Plaintiff presents challenges concerning the ALJ's calculation of her RFC, alleging the ALJ's consideration of treating rheumatologist Dr. Bellam's medical opinion was conclusory, not amendable to judicial review, and not supported by substantial evidence, thereby violating "20 C.F.R. § 505.1520c."[3]  (Doc. 12 at 18).  Because Plaintiff asserts errors concerning the calculation of her RFC, special guidelines apply.

The ALJ determines a claimant's RFC by examining "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In this examination, the ALJ considers the persuasiveness of "all medical opinions and prior administrative medical findings" against the backdrop of five specific factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Garcia v. Saul*, No. 19-CV-01307, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020); 20 C.F.R. § 404.1520c(a)–(c). Of these factors, supportability and consistency are of utmost persuasive importance—an explanation is required only for these two factors when the ALJ articulates her conclusions. 20 C.F.R. § 404.1520c(b)(2); *see Morales*, 2022 WL 18912157, at *3.

"Supportability" refers to the proposition that the "more relevant" evidence that exists to support a medical opinion, the "more persuasive" the opinion will be. 20 C.F.R. § 404.1520c(c)(1). "Consistency," on the other hand, refers to the proposition that the "more consistent" a medical opinion or prior administrative medical findings is with the evidence from other medical and nonmedical sources, the "more persuasive" the opinion will be. *Id.* § 404.1520c(c)(2). Put differently, "supportability looks internally to the bases presented by the medical opinion itself while consistency is an external inquiry that juxtaposes a medical opinion

---

3. Plaintiff cites "20 C.F.R. § 505.1520c," but no such provision appears to exist. (Doc. 12 at 16). The Court infers Plaintiff intended to cite 20 C.F.R. § 404.1520c, which governs the evaluation of medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.

to other evidence in the record, including opinions of other medical professionals." *Morales*, 2022 WL 18912157, at *3 (citation and internal quotation marks omitted).

The ALJ's explanation for persuasiveness "must enable the court to undertake a meaningful review of whether [her] finding with regard to the particular medical opinion was supported by substantial evidence" and "must not require the [C]ourt to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Chavarria v. Kijakazi*, No. 22-CV-00407, 2023 WL 3984857, at *3 (W.D. Tex. June 13, 2023). In other words, "there must be a discernable 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Id.* (internal quotation marks omitted). If the ALJ fails to address or mention a medical opinion in the record without explanation, she commits legal error. *Sherman*, 2023 WL 3737022, at *4. The ALJ's opinion is, however, required only to explain how medical opinions from a single source are considered together in one analysis—individual explanations for each medical opinion are not mandatory. 20 C.F.R. § 404.1520c(b). No articulation is necessary for nonmedical opinions. *Id.*

As of March 27, 2017, a date which precedes the hearings at issue in this case, an ALJ is no longer required to consider a treating physician's medical opinion to be controlling. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (per curiam). Instead, the aforementioned factors are to be used to allocate non-controlling weight to a given opinion. *See* 20 C.F.R. § 404.1520c(a). With these principles in mind, the Court turns to Plaintiff's arguments.

Plaintiff argues the ALJ failed to identify any of Dr. Bellam's treatment notes that clearly strayed from the limitations assessed, precluding meaningful judicial review, and failed to support the rejection of Dr. Bellam's opinion report with substantial evidence. (Doc. 12 at 18).

Plaintiff's briefing refines this argument to challenge the ALJ's analysis for "fail[ing] to correctly apply 20 C.F.R. § 404.1520c when deciding the persuasiveness of Dr. Bellam's opinion." *Id.* at 20. The Commissioner claims Plaintiff's argument "focuses on only one paragraph, rather than reading the decision as a whole." (Doc. 21 at 2). In other words, the Commissioner maintains the ALJ pointed to Dr. Bellam's specific treatment notes that do not support the conclusions in the opinion, discussed other evidence that is inconsistent with Dr. Bellam's opinion, and that a "review of the decision as a whole" shows substantial evidence to support the ALJ's finding that Dr. Bellam's opinion was not persuasive. *Id.*

In this case, the Court finds the ALJ properly considered all of the factors for all of the medical opinions and prior administrative medical findings. In this instance, the Court can only upend the ALJ's decision if the ALJ applied the incorrect legal standard in evaluating the evidence or if the record lacks substantial evidence to support the ALJ's decision. Plaintiff does not argue the ALJ applied the incorrect legal standard. Rather, Plaintiff claims the ALJ improperly rejected Dr. Bellam's opinion and failed to articulate her consideration of two factors—"supportability" and "consistency"—when determining the persuasiveness of medical opinions. (Doc. 12 at 16, 18).

Multiple opinions on Plaintiff's medical status were considered by the ALJ including: (1) evaluations by the State agency medical consultants ("SAMCs"); (2) the State agency psychological consultants; (3) Dr. Marchioni; (4) Cheryl Vallie, CFNP[4]; and (4) Dr. Bellam. (Doc. 6-2 at 39–40). The ALJ also considered the third-party statement completed by the

---

4. The Court notes Cheryl Vallie's medical evaluation form did not include any opinion or discussion of the claimant's functional abilities or limitations. (Doc. 6-2 at 40). Accordingly, the form did not provide an opinion for the ALJ to evaluate for persuasiveness. *Id.*

claimant's husband, John Avery.[5] *Id.* at 40. Accordingly, the SAMCs concluded Plaintiff can perform a range of light work with unlimited postural limitations, except that she can occasionally climb ladders, ropes, or scaffolds, and frequently crawl and climb ramps and stairs. (Doc. 6-2 at 39). The SAMCs further found Plaintiff is limited to frequent overhead reaching with the left upper extremity and she does not have a severe mental impairment. *Id.* Dr. Bellam, in response to an interrogatory posed by the ALJ, also completed a Disability Report Form indicating limitations of the claimant's ability to sit, stand, walk, lift, and carry, which the ALJ concluded was "unpersuasive." *Id.* at 40; (Doc. 6–9 at 20–21).

Under the revised standard, an ALJ is "free to adopt in part or reject in full any opinion [she] finds not to be supported by or consistent with the medical evidence." *Lopez v. Kijakazi*, No. 21-CV-00930, 2022 WL 4355142, at *4 (W.D. Tex. Sept. 20, 2022) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)). Indeed, there is no requirement that the ALJ's RFC finding must mirror a physician's opinion. *Oden v. Comm'r of Soc. Sec.*, No. 21-CV-284, 2022 WL 1645079, at *9 (E.D. Tex. May 23, 2022). On the other hand, although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must now "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Padgett v. Soc. Sec. Admin.*, No. CV 23-1468, 2023 WL 8369248, at *4 (E.D. La. Dec. 4, 2023) (citing 20 C.F.R. § 404.1520c). But at the same time, the Fifth Circuit has emphasized: "As we've noted time and again, an 'ALJ is not always required to do an exhaustive point-by-point discussion' of the evidence she reviews." *Silva v. Kijakazi*, No. 22-

---

5. Pursuant to 20 C.F.R. § 404.1520c, third-party statements are considered evidence from a nonmedical source, and the ALJ need not articulate how this evidence was considered in terms of persuasiveness. 20 C.F.R. § 404.1520c(d).

51045, 2023 WL 3723628, at *1 (5th Cir. May 30, 2023) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).

In this case, Plaintiff's primary premise is incorrect: The ALJ did not fail to discuss Dr. Bellam's treatment notes that strayed from the limitations assessed or fail to support the finding that her opinion was unpersuasive with substantial evidence. Rather, the ALJ explained Dr. Bellam's opinion was unpersuasive because her report was unsupported by, and not consistent with the overall medical evidence and that it failed to provide support for the limitations expressed in her opinion. (Doc. 6-2 at 40). Consequently, the ALJ, in articulating the RFC, discussed Dr. Bellam's opinion and the SAMC findings. *Id.* at 37–40. And while the ALJ found Dr. Bellam's opinion unpersuasive, the Court notes the ALJ is admonished to not hold an individual medical opinion to be determinative of a claimant's RFC. *See Winston*, 755 F. App'x at 402 n.4. Indeed, the ALJ considered all medical evaluations and opinions and ultimately found "the evidence . . . establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work." *Id.* at 40. Whether these conclusions as to the medical significance of the findings and opinion were supported by substantial evidence is a question addressed below. At a minimum, because the ALJ identified evidence in the record that contradicts Plaintiff's assertions and Dr. Bellam's opinions, remand is unwarranted. *See Padgett v. Soc. Sec. Admin.*, No. CV 23-1468, 2023 WL 8369248, at *5 (E.D. La. Dec. 4, 2023).

### 1. Consistency

Plaintiff is incorrect in asserting the ALJ did not discuss specific treatment records that were inconsistent with Dr. Bellam's opinion. (Doc. 12 at 19). The ALJ examined the record and identified multiple conflicts between the objective evidence and the opinion. First, the ALJ concluded the SAMCs' evaluations "to be persuasive." (Doc. 6-2 at 39). The ALJ found these

evaluations persuasive because they were "supported by what the consultants saw in the record at the time the findings were rendered, including with the claimant's treatment notes . . . consistent with the record as a whole, including with the claimant's imaging studies of record, as discussed above," and "are further consistent with some of the claimant's abnormal findings with respect to her left upper extremity, as well as findings that she had normal strength and range of motion of all extremities." *Id.* The ALJ noted various diagnostic and physical examination findings indicating Plaintiff was limited to a reduced range of light work. *Id*. at 39. Accordingly, the ALJ concluded the record supported an RFC for light work as defined in 20 CFR 404.1567(b). *Id.* at 39–40; *see De Leon v. Berryhill*, No. 18-CV-00185, 2019 WL 404176, at *7 (W.D. Tex. Jan. 31, 2019) (citing 20 C.F.R. §§ 404.1567, 416.967 (listing the requirements for light work)).

Second, the ALJ found Dr. Bellam's opinion unpersuasive after outlining evidence that contradicts both Plaintiff's assertions and the limitations assessed by Dr. Bellam. (Doc. 6-2 at 40); *see Padgett*, 2023 WL 8369248, at *5 (explaining that an ALJ need not provide an exhaustive, point-by-point discussion and that remand is unwarranted where the ALJ identifies record evidence contradicting a treating physician's conclusions). Here, the ALJ determined Dr. Bellam's opinion was not consistent with the record because it was unsupported by the medical evidence previously outlined by the ALJ. *See id.* The ALJ specifically explained the opinion was inconsistent with evidence showing Plaintiff "had normal strength, normal range of motion, normal ambulation, and generally normal strength and muscle tone." *Id*.; *Henderson-Washington v. Comm'r of Soc. Sec.*, No. 23-CV-00006, 2023 WL 9005588, at *4 (N.D. Tex. Dec. 28, 2023) (explaining the ALJ's prior discussion of the medical records, when coupled with a determination of inconsistency with the opinion evidence, is sufficient to allow a reviewing court to trace the ALJ's reasoning); *Webster v. Comm'r of Soc. Sec.*, No. 19-CV-97, 2020 WL 760395,

at *5 (N.D. Miss. Feb. 14, 2020), *aff'd sub nom.*, *Webster v. Kijakazi*, 19 F.4th 715 (5th Cir. 2021). The ALJ also acknowledged that although "some evidence showed some decreased range of motion in the Plaintiff's upper extremities," the overall evidence did not support the limitations expressed in Dr. Bellam's opinion. (Doc. 6-2 at 40). Plaintiff argues the ALJ's determination was conclusory and Dr. Bellam's notes were "consistent with the treatment notes and opinions of Dr. Oliva and NP Vallie." (Doc. 12 at 21). But the ALJ cited those treatment notes and indicated Plaintiff's "memory, attention span, and concentration were normal," her "gait and station were normal, and her cranial nerves were grossly intact," she "was advised to increase her activity level the same month," and she "ambulated without difficulty in June 2023" with otherwise unremarkable findings. (Doc. 6-2 at 33–34, 38–39).

The ALJ further recognized Dr. Bellam's own treatment notes did not support the limitations she assessed. *Id.* at 40. For example, although Dr. Bellam signed a document indicating Plaintiff's pain met all Budapest Criteria for sympathetically maintained pain, the ALJ noted "[o]n examination the same month, [Plaintiff] had 4/5 strength in the bilateral lower extremities, but no other abnormal findings were noted (Ex. 24F/14)." *Id.* at 38, 40. Thus, where there were conflicts and inconsistencies between the medical record and the medical opinions and evaluations, the ALJ pointed to such. These references to the medical records sometimes appear throughout the ALJ's decision. (*See, e.g.*, Doc. 6-2 at 32–35, 38–40). Nevertheless, the Court considers these discussions in tandem with the persuasiveness analysis of the available medical findings and opinions, to the extent they are relevant, despite their appearance in sections of the opinion other than the evaluation and opinion discussions. *See Shelby v. Comm'r*, No. 21-CV-00038, 2022 WL 18356684, at *7 (E.D. Tex. Dec. 15, 2022) ("[T]he undersigned's review extends beyond just the part of the decision directly discussing a specific opinion.").

In short, Plaintiff fails to consider the ALJ's decision as a whole. In determining Dr. Bellam's opinion was not persuasive, the ALJ expressly relied on the medical evidence in the record, including Dr. Bellam's own notes and other evidence inconsistent with the limitations she assessed. (*See, e.g.*, Doc. 6-2 at 38, 40). A review of the decision in its entirety, along with the cited portions of the record, demonstrates that substantial evidence supports the ALJ's determination. Plaintiff's points to no specific inconsistency in the ALJ's reasoning aside from her broad claim that the ALJ rejected the opinion that "in two conclusory sentences." (Doc. 12 at 19). The ALJ's explanation, however, is sufficiently detailed to permit meaningful review, and substantial evidence supports the ALJ's consistency finding. Because the ALJ adequately explained the nexus between her consistency determination regarding Dr. Bellam's opinion and the SAMCs' evaluations, this satisfies the requirements of the revised regulations.

## 2. Supportability

With respect to the ALJ's supportability explanation, the ALJ discussed the support for both the SAMC evaluations and Dr. Bellam's opinion. The ALJ observed the SAMC evaluations were "supported by what the consultants saw in the record at the time the findings were rendered." (Doc. 6-2 at 39). Although the ALJ did not expressly notate each part of the record supporting the SAMC evaluations, a brief look at the ALJ's decision reveals the ALJ did in fact consider many, if not all, of the opinions on which the SAMC evaluations were based. (*Compare, e.g.*, Docs. 6-3 at 2–9, 11–19; 6-8 at 388–425, 426–47 (medical appearances considered by SAMC) *with* 6-2 at 38–40 (medical appearances considered by ALJ)). Accordingly, the ALJ thoroughly considered the support behind the SAMC findings. *Id.*

Regarding the ALJ's supportability analysis of Dr. Bellam's opinion, the ALJ determined that the bases for Dr. Bellam's opinion were "unsupported by, and not consistent with, the

14

medical evidence." *Id.* at 40. The ALJ summarized Dr. Bellam's opinion and explained while some evidence shows some decreased range of motion in the claimant's upper extremities, the opinion was unsupported by medical evidence showing Plaintiff typically had normal strength, normal range of motion, normal ambulation, and generally normal strength and muscle tone. *Id.* The ALJ also detailed Plaintiff's reported symptoms and numerous medical appearances from December 2021 through October 2023. (Doc. 9-2 at 20–21); *See Padgett*, 2023 WL 8369248, at *5 ("[T]he ALJ outlined evidence that contradicts [the treating physician's] opinions, and this issue does not warrant remand."). The ALJ also referenced the 2022 treatment notes from Dr. Bellam reflecting full range of motion in all extremities; normal tiptoe, heel walk, tandem gait, gait and station; and full strength, including ambulation without difficulty. (Docs. 6-2 at 37; 6-8 at 471-72). Given the ALJ's extensive discussion of Plaintiff's medical record and the specific evidence showing why Dr. Bellam's opinion was unpersuasive, the decision contains sufficient articulation identifying the evidentiary choices made by the ALJ and the shortcoming in the evidence supporting the opinion.

The ALJ is not required to delineate specifically each and every piece of evidence supporting each limitation considered in the RFC. *Boller v. Comm'r*, No. 21-CV-01001, 2022 WL 18586837, at *10 (E.D. Tex. Dec. 12, 2022). Thus, the mere omission of specific citations to every piece of evidence in the medical record explaining why Dr. Bellam's opinion was not persuasive is insufficient to demonstrate a lack of substantial evidence. *Silva*, 2023 WL 3723628, at *1 ("As we've noted time and again, an ALJ is not always required to do an exhaustive point-by-point discussion of the evidence she reviews."). This is especially true where, as here, the ALJ repeatedly discussed both Dr. Bellam's findings and the medical records upon which they were based. (*See, e.g.*, Doc. 6-2 at 37–38, 40). Because evidence supporting the

ALJ's decision appears throughout the record and reasonably supports the ALJ's conclusion, Plaintiff's argument cannot succeed.

It is the duty of the ALJ to resolve conflicts in the evidence. It is not the province of the Court to reweigh the medical evidence or "substitute its judgment for that of the [ALJ]." *Behrens v. Comm'r*, No. 21-CV-00144, 2022 WL 7353121, at *5 (E.D. Tex. July 4, 2022), *R. & R. adopted sub nom.*, 2022 WL 4587851 (E.D. Tex. Sept. 29, 2022). Rather, the Court only "scrutinize[s] the record to determine if [substantial] evidence exists" to support the ALJ's decision. *McCullough v. Berryhill*, No. 18-CV-00128, 2019 WL 1431124, at *3 (W.D. Tex. Mar. 29, 2019) (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989)). The Court, having done so here, must conclude the ALJ duly resolved conflicts in the evidence. The ALJ's decision should not be reversed on this ground.

### C.    Harmless Error

Because the Court has concluded Plaintiff has not demonstrated that the ALJ improperly rejected any medical opinion, that the challenged portions of the ALJ's decision were not supported by substantial evidence, or that the ALJ committed reversible error, the Court's inquiry should terminate in favor of the Commissioner. However, in the event the Court finds the ALJ erred, the Court will address whether any alleged error was harmful. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

When the ALJ proceeds past step two, such as to the RFC determination between steps three and four, and commits error, "remand is warranted only if the ALJ's error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam). Harmful error exists in the persuasiveness context where further explanation by the ALJ in considering then-rejected or -discounted medical opinions would have led the ALJ to adopt the

offered recommendations. *See id.* at *4. In other words, an error is harmless "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Chavarria v. Kijakazi*, No. 22-CV-00407, 2023 WL 3984857, at *6 (W.D. Tex. June 13, 2023) (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)). The claimant possesses the burden to demonstrate prejudice or harm resulting from any error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

Plaintiff has failed to satisfy this burden. Plaintiff has not demonstrated that any failure to further evaluate the consistency of Dr. Bellam's opinion with the other medical and non-medical evidence of record could have changed the outcome in her case. Stated another way, Plaintiff has not demonstrated that had the ALJ expressly undertaken a more thorough consistency and supportability analysis, the ALJ might have reached a different conclusion on the question of her disability. Importantly, this is not a case where the ALJ completely failed to consider a medical opinion or rejected a medical opinion without any explanation. *Cf. Kneeland v. Berryhill*, 850 F.3d 749, 761–62 (5th Cir. 2017) (vacating and remanding where the ALJ neglected to address or even mention a medical opinion that, if accorded some weight, would surely have changed the RFC determination; this was therefore not harmless error). Here, the ALJ summarized the findings of Dr. Bellam and found the opinion "unpersuasive." (Doc. 6-2 at 40). The ALJ additionally explained why she rejected the portion of Dr. Bellam's opinion regarding Plaintiff; she found it inconsistent, unsupported by evidence, and at odds without carefully detailed findings showing Plaintiff had normal strength, normal range of motion, normal ambulation, and generally normal strength and muscle tone. *Id.* Thus, independent of any valid consistency analysis, the ALJ rejected the opinion for clearly stated reasons. Plaintiff has not met her burden

17

of demonstrating prejudice or harm from any supposed ALJ error. Accordingly, the Court concludes reversal is not warranted.

## IV.   RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**.

SIGNED this 19th day of December, 2025.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

19